UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00174

J.T. CARNEAL, *et al.*     Plaintiffs

v.

TRAVELERS CASUALTY INSURANCE OF AMERICA     Defendant

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Defendant Travelers Casualty Insurance of America's Motion for Partial Summary Judgment. (Docket No. 21.) Plaintiffs J.T. Carneal d/b/a J.T. Carneal Enterprises and Suzanne Roberts d/b/a Anne's Bridals, LLC, have responded, (Docket No. 26), and Defendant has replied, (Docket No. 29). This matter is now ripe for adjudication. For the reasons that follow, the Court will GRANT Defendant's Motion for Partial Summary Judgment and DISMISS Plaintiffs' bad faith claims.

BACKGROUND

This litigation arises out of water damage to Plaintiffs' building and inventory on or about September 9, 2010. On September 14, 2010, a claim was made for that damage under a policy of insurance issued by Defendant to Anne's Bridals. On September 21, 2010, Defendant retained OnTheRock Engineering, LLC, to perform an investigation of the property and determine the source of the water damage. By letter of September 29, 2010, Defendant informed Plaintiff Roberts that it was proceeding with an investigation of her claim. OnTheRock Engineering issued its report on October 1,

2010, in which it concluded that the two sources of moisture infiltration had not been caused by storm damage but instead were the result of improper installation of the EPDM rubber membrane roof.  Then, by letter of November 21, 2010, Defendant informed Plaintiff Roberts that it was denying her claim.  In that letter, Defendant identified the facts and policy provisions on which its decision had been made, specifically quoting the policy's exclusion for damage caused by "faulty, inadequate or defective . . . repair, construction, renovation, remodeling [or] materials used in repair, construction, renovation, or remodeling."  (Docket No. 21-1, at 46-47.)   Defendant stated that it was denying Plaintiff Roberts' claim based on that policy provision and on the investigation and report of its expert, OnTheRock Engineering.

Plaintiffs originally filed this action in McCracken Circuit Court on September 7, 2012.  In Count II their Complaint, Plaintiffs allege that Defendant violated the Kentucky Unfair Claims Settlement Practices Act (UCSPA), Ky. Rev. Stat. § 304.12-230, by (1) failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the policy; (2) refusing to pay the Plaintiffs' claims without conducting a reasonable investigation based upon all available information; (3) failing to affirm or deny coverage of the Plaintiffs' claims within a reasonable time; and (4) not attempting in good faith to effectuate a prompt, fair, and equitable settlement of the Plaintiffs' claim; and (5) failing to promptly provide a reasonable explanation, based on facts and the policy of insurance, for its decision to deny Plaintiffs' claim.

STANDARD

The propriety of summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs argue that "[i]t is generally accepted that Kentucky has a restrictive standard for summary judgment as set out in *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991)." (Docket No. 26, at 1.) Contrary to Plaintiffs' position, however, though the substantive law of Kentucky is applicable here pursuant to *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court sitting in diversity applies the standards of Federal Rule of Civil Procedure 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*" *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993) (citation omitted), *abrogated on other grounds by Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010); *accord Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 n.4 (6th Cir. 2013) ("[A] federal court sitting in diversity uses the federal standard for summary judgment."); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 374 (6th Cir. 2009) ("The availability of summary judgment in diversity actions is governed by the federal standard, embodied in Fed. R. Civ. P. 56, rather than by state law.").

Under Rule 56, summary judgment is appropriate where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). The Plaintiffs must present more than a mere scintilla of

evidence in support of their position; they must present evidence on which the trier of fact could reasonably find for them. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Mere speculation will not suffice to defeat a motion for summary judgment: "[T]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996), *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir. 2012).

In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: citing to particular parts of materials in the record [or] showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). Finally, "[i]f a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: . . . consider the fact undisputed [or] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

DISCUSSION

Generally, the Kentucky UCSPA, Ky. Rev. Stat. § 304.12-230, "is intended 'to protect the public from unfair trade practices and fraud' and 'imposes what is generally known as the duty of good faith and fair dealing owed by an insurer to an insured.'" *Phelps v. State Farm Mut. Auto. Ins. Co.*, 680 F.3d 725, 731 (6th Cir. 2013) (internal citations omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988); *Knotts v. Zurich Ins. Co.*, 197 S.W.3d 512, 515 (Ky. 2006)). "The UCSPA fundamentally requires that 'a good faith attempt be made to effectuate a prompt, fair and equitable settlement.'" *Id.* (quoting *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 454 (Ky. 1999)). Under the UCSPA, insurance companies are prohibited from engaging in seventeen enumerated acts or omissions. *See* Ky. Rev. Stat. § 304.12-230(1)–(17). Though Plaintiffs do not identify the particular subsections on which their bad faith claims are based, they appear to allege that Defendant violated the following subsections:

> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> . . . .
> (4) Refusing to pay claims without conducting a reasonable investigation based upon all available information;
> (5) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed;
> (6) Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;
> . . . .

(14) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim . . . .

*Id.* § 304.12-230.

In order to maintain a bad faith claim under the UCSPA, Plaintiffs "must meet a high threshold standard that requires evidence of 'intentional misconduct or reckless disregard of the rights of an insured or a claimant' by the insurance company that would support an award of punitive damages." *Phelps*, 680 F.3d at 731 (quoting *Wittmer v. Jones*, 864 S.W. 2d 864, 890 (Ky. 1993)). In *Wittmer v. Jones*, the Kentucky Supreme Court expressly described the threshold standard as that of "outrageous" conduct by the insurer, noting "there is no such thing as a 'technical violation' of the UCSPA." 864 S.W.2d at 890. As the Kentucky Court of Appeals more recently explained in *United Services Automobile Association v. Bult*:

> The evidentiary threshold is high indeed. Evidence must demonstrate that an insurer has engaged in outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights. Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury. Evidence of mere negligence or failure to pay a claim in timely fashion will not suffice to support a claim for bad faith. Inadvertence, sloppiness, or tardiness will not suffice; instead, the element of malice or flagrant malfeasance must be shown.

183 S.W.3d 181, 186 (Ky. Ct. App. 2003). Thus, to survive Kentucky's high threshold requirement, Plaintiffs must show "proof of bad faith . . . sufficient for the jury to conclude that there was 'conduct that is *outrageous*, because of the *defendant's evil motive* or [its] *reckless indifference* to [their] rights . . . . This means there must be sufficient evidence of *intentional misconduct or reckless disregard of the rights of an*

*insured or a claimant to warrant submitting the right to award punitive damages to the jury.*" *Id.* (emphasis in original) (quoting *Wittmer*, 864 S.W.2d at 890); *accord Phelps*, 680 F.3d at 731-32. Plaintiffs have made no such showing here, nor does the record reflect any evidence of the sort of "intentional [or] outrageous conduct . . . driven by evil motives or by an indifference to its insureds' rights" necessary to satisfy the high Kentucky threshold for bad faith claims. *Bult*, 183 S.W.3d at 186 (applying *Wittmer*, 864 S.W.2d at 890).

Plaintiffs seem to take issue primarily with the engineering firm Defendant hired to investigate their claim. Plaintiffs argue that "[i]nstead of sending a fair and impartial engineer to plaintiffs' damaged premises, [Defendant] chose instead to send the engineer who works for them and obviously does favors for them." (Docket No. 26, at 3.) To this end, Plaintiffs point out that James Skees, P.E., of OnTheRock Engineering had been hired by Defendant to perform "74 jobs in 2010 at $800.00 on average [and] 69 jobs in 2011 at $800.00 on average." (Docket No. 26, at 3.) Plaintiffs maintain that Defendant "acted outrageously," arguing: "What was more outrageous than [Defendant] choosing their Louisville engineer who had worked on 70 (and up) time [sic] a year [?]" (Docket No. 26, at 3.) Plaintiffs also assert that Defendant "acted due to an evil motive," reasoning that "[t]he evil motive was to deprive plaintiffs of a fair, honest expert witness." (Docket No. 26, at 3.) But beyond their conclusory statements, Plaintiffs point to no actual evidence of the sort of "intentional [or] outrageous conduct . . . driven by evil motives or by an indifference to its insureds' rights" as required by Kentucky law. *Bult*, 183 S.W.3d at 186 (applying *Wittmer*, 864 S.W.2d at

890). For this reason, summary judgment is appropriate relative to Plaintiffs' bad faith claims in Count II of their Complaint.

Furthermore, even assuming Kentucky's high threshold standard could be satisfied, the Court finds that Defendant still would be entitled to summary judgment on each of the Plaintiffs' specific claims brought under the Kentucky UCSPA. First, Plaintiffs claim that Defendant failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under the policy. *See* Ky. Rev. Stat. § 304.12-230(2). Plaintiffs do not elaborate on this claim in their Complaint. The record reflects that Defendant promptly acknowledged the Plaintiffs' claim within roughly two weeks of its submission by informing Plaintiff Roberts that it was proceeding with its investigation. Defendant thereafter communicated its decision to deny Plaintiffs' claim less than two months later. To this extent, the Court finds no genuine issue of material fact whether Defendant violated § 304.12-230(2) by failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under the policy.

Still, a broad reading of the Plaintiffs' Response suggests that this allegation may be premised upon two letters sent to Defendant by Plaintiffs' counsel on October 17 and November 8, 2012, which in effect were offers of settlement. (Docket Nos. 26-1; 26-2.) In this regard, Plaintiffs seem to argue that Defendant's failure to make a counteroffer or otherwise respond to Plaintiffs' settlement offers amounts to a violation of § 304.12-230(2). Defendant urges the Court to disregard those letters as irrelevant to the question whether the decision to deny Plaintiffs' claim was proper. Defendant

further highlights the fact that Plaintiffs had already filed suit in this matter as of September 7, 2012, some forty days prior to the first letter. (*See* Docket No. 1-1, at 4.)

In *Knotts v. Zurich Insurance Co.*, the Kentucky Supreme Court made clear that the UCSPA applies to conduct both before and after the commencement of litigation, and that settlement behavior during litigation may be evidence of bad faith. 197 S.W.3d at 522-23. However, the Kentucky Court went on to caution:

> We must add, however, that such evidence is not automatically admissible. Evidence of post-filing conduct may often be of limited relevance to a claim of bad faith and raises distinct concerns about prejudice to the insurance company. While resolution of the tension between the competing considerations of probativeness and prejudice is an unquestioned requirement of the law of evidence, we note that there has been heightened concern about this issue, as it applies to post-filing conduct, since courts began considering such evidence of bad faith. Thus, while it will no doubt further limit the admissibility of post-filing behavior, we want to emphasize that before admitting evidence of post-filing behavior, courts must be careful to weigh the probativeness of the proposed evidence against its potential for prejudice . . . .

*Id.* at 523 (internal citations omitted). This Court, applying *Knotts*, addressed an analogous scenario in which an insurer refused to make an offer of settlement in *Budde v. State Farm Mutual Automobile Insurance Co.*, stating: "The relevant inquiry is whether [the insurer] had a reasonable basis for denying the claim and making no offer of settlement." 2009 WL 3483951, at *7 (W.D. Ky. Oct. 22, 2009).

In the present case, Defendant articulated its basis for denying Plaintiffs' claim in its letter of November 21, 2010. Regardless whether Defendant's decision to deny coverage under the policy was correct, the record reflects that Defendant offered a reasonable basis for that decision and that Defendant timely communicated that basis to

Plaintiffs. Moreover, Plaintiffs point to nothing in the record to indicate that liability had become reasonably clear such that Defendant lacked a reasonable basis in either law or fact for denying the claim. Given that this action has rapidly progressed from removal in November 2012 to a tentative trial date less than two months away, and in light of the evidence of record, the Court finds little probative value in Defendant's decision not to make a counteroffer or respond to Plaintiffs' offer of settlement. Thus, the limited relevance of this evidence to Plaintiffs' bad faith claim, when weighed against its potential for prejudice, is insufficient to withstand summary judgment on Plaintiffs' claim under § 304.12-230(2).[1]

Plaintiffs next allege that Defendant refused to pay their claims without conducting a reasonable investigation based upon all available information. *See* Ky. Rev. Stat. § 304.12-230(4). Again, Plaintiffs seem to base this allegation on Defendant's employment of Skees and OnTheRock Engineering, insisting that "a 'reasonable investigation' was not had when defendants sent a Louisville engineer to inspect the damaged premises." (Docket No. 1-1, at 8.) In their Response, Plaintiffs point to the opinions of their expert, Chuck Howarth, stating that "Howarth's opinions as he testified to are: . . . [Defendant] refused to pay the claim as a result of a failure to conduct a reasonable investigation [and] did not objectively investigate this claim and the cause of the losses." (Docket No. 26, at 5-6.) In a separately entered Memorandum Opinion and Order, the Court granted Defendant's motion to exclude Howarth's

---

[1] Even if evidence of Defendant's decision not to respond to Plaintiffs' settlement offer were admissible to prove that Defendant violated § 304.12-230(2) by "[f]ailing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies," summary judgment nonetheless would be appropriate because this evidence would not satisfy the requisite Kentucky threshold standard for the Plaintiffs' bad faith claims.

proposed expert testimony. But even assuming Howarth's opinions were admissible, those conclusory opinions would not be sufficient to defeat summary judgment because, contrary to Plaintiffs' conclusory assertions, the evidence of record suggests that Defendant did, in fact, conduct a reasonable investigation. Ultimately, neither the fact that Plaintiffs take issue with Defendant's choice of engineer nor Plaintiffs' (or their expert's) unsubstantiated allegations are sufficient to establish a genuine issue of material fact. Therefore, the Court finds that Defendant is entitled to summary judgment on Plaintiffs' claim under § 304.12-230(4).

Third, Plaintiffs allege that Defendant failed to affirm or deny coverage within a reasonable time. *See* Ky. Rev. Stat. § 304.12-230(5). Plaintiffs do not elaborate on this allegation in either their Complaint or their Response. The record reflects that Defendant promptly investigated Plaintiffs' claim and thereafter informed Plaintiffs of its decision. The entire duration between the submission of Plaintiffs' claim and Defendant's decision to deny coverage spanned just over two months. Plaintiffs point to no authority establishing that a two-month delay between an insured's claim submission and an insurer's coverage decision is unreasonable, nor can the Court locate any. Thus, given the record before it, the Court finds that the delay here between September 14 and November 21 was not unreasonable and that summary judgment also is proper relative to Plaintiffs' § 304.12-230(5) claim.

Fourth, Plaintiffs allege that Defendant did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of their claim. *See* Ky. Rev. Stat. § 304.12-230(6). In their Response, Plaintiffs again point to testimony of their expert, summarizing Howarth's opinion in this regard as: "[Defendant] did not attempt in good

faith to effectuate a prompt, fair and equitable settlement of this claim." (Docket No. 26, at 5.) As noted above, the Court has excluded Howarth's proposed testimony in this regard. But irrespective of whether Howarth's opinions are admissible, both Plaintiffs and their expert neglect the remainder of § 304.12-230(6)'s text, which prohibits "[n]ot attempting in good faith to effectuate prompt, fair and equitable settlements of claims *in which liability has become reasonably clear*." Ky. Rev. Stat. § 304.12-230(6) (emphasis added). Defendant points to its expert investigator's report and the language of the policy itself, explaining that it "did not attempt to effectuate a settlement of the claim because liability was not 'reasonably clear' based on [its] investigation of the claim." (Docket No. 21-1, at 8.) Certainly, "an insurer is . . . entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 586 (alteration omitted) (quoting *Wittmer*, 864 S.W.2d at 890). Plaintiffs cite nothing in the record to indicate that their claim was not debatable or that liability had become reasonably clear. Moreover, the Court finds no evidence that Defendant did not attempt in good faith to effectuate a prompt, fair, and equitable settlement of their claim. Accordingly, because Plaintiffs have not established a genuine issue of material fact in regard to this allegation, summary judgment is warranted on their § 304.12-230(6) claim as well.

Finally, Plaintiffs allege that Defendant failed to promptly provide a reasonable explanation, based on facts and the policy of insurance, for its decision to deny coverage. *See* Ky. Rev. Stat. § 304.12-230(14). Again, Plaintiffs do not expound upon this allegation, nor do they point the Court to any evidence of record in support thereof. The record shows that in its November 21 letter denying coverage, Defendant expressly

and specifically identified the facts and policy provisions on which its decision had been made. (*See* Docket No. 21-1, at 46-47.) Thus, the Court finds no genuine issue of material fact whether Defendant violated § 304.12-230(14) by failing to promptly provide a reasonable explanation for its decision to deny coverage.

## CONCLUSION

For the foregoing reasons, the Court finds that summary judgment is appropriate on Plaintiffs' bad faith claims. Accordingly;

IT IS HEREBY ORDERED that Defendant's Motion for Partial Summary Judgment, (Docket No. 21), is GRANTED, and Plaintiffs' bad faith claims alleged in Count II of their Complaint are hereby DISMISSED.

IT IS SO ORDERED.
Date:

cc: Counsel